**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:19-CV-363-RJC-DCK**

| | |
|---|---|
| **AUDREY WILLIAMS PRIDE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| **US DEPARTMENT OF THE NAVY, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |

**THIS MATTER IS BEFORE THE COURT** on the "United States' Motion To Dismiss

For Failure To Prosecute Or, In The Alternative, For Lack of Subject-Matter Jurisdiction"

(Document No. 29) and the "United States' Motion To Dismiss For Lack Of Subject-Matter

Jurisdiction" (Document No. 33). These motions have been referred to the undersigned Magistrate

Judge pursuant to 28 U.S.C. § 636(b) and are now ripe for review. Having carefully considered

the arguments, the record, and the applicable authority, the undersigned will respectfully

recommend that the motion to dismiss for failure to prosecute be <u>denied</u> and the motion to dismiss

for lack of subject-matter jurisdiction be <u>granted</u> in part and <u>denied</u> without prejudice in part.

## I. BACKGROUND

Plaintiff Audrey Williams Pride ("Plaintiff" or "Pride") initiated this action with the filing

of a *pro se* Complaint on July 26, 2019 against the United States Department of the Navy ("the

Navy"). (Document No. 1). Pride alleges that due to the negligence of the Navy at Camp Lejeune

in North Carolina, she sustained personal injuries and her unborn child died on account of exposure

to contaminated water. <u>Id.</u> at p. 5. Her claims for personal injury and wrongful death in the initial

Complaint seem to arise under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.

As the United States points out in its "Memorandum In Support Of Motion To Dismiss The Third Amended Complaint For Lack Of Subject-Matter Jurisdiction" (Document No. 34), prior to filing the instant action in federal court, Pride submitted two administrative claims for money damages to the Navy.  See (Document No. 14-1);  (Document No. 14-2).  "One claim, submitted on April 29, 2015 on behalf of [Plaintiff] through the Bell Legal Group was for $10,000,000 for personal injury." (Document No. 34, p. 2).  The second claim, also submitted on April 29, 2015 through the Bell Legal Group, "was presented on behalf of the 'Estate of Willie J. Morris, III' for $10,000,000 for wrongful death."  Id.  The claims indicate that during the years of 1983 – 1987, Pride "resided on and off base" at Camp Lejeune.  (Document No. 14-1, p. 1); (Document No. 14-2, p. 1).  In 1986, the claims allege, Plaintiff "delivered a stillborn baby boy, which she believes is related to her exposure to contaminates via air, water, and soil while at Camp Lejeune." (Document No. 14-1, p. 1).

Nearly four years after Plaintiff submitted her two administrative claims with the Navy, the Navy issued a denial of both claims on January 25, 2019.  (Document No. 14-3).  On July 23, 2019, "the Bell Legal Group sought reconsideration of the Navy's denial of the wrongful death claim brought on behalf of the Estate of Willie J. Morris, III."   (Document No. 34, p. 2).[1] According to the United States' Memorandum in support of its motion to dismiss for lack of subject-matter jurisdiction, the "Navy has not acted on that request for reconsideration."  Id. at pp. 2-3.

_____

[1] The United States' brief seems to misstate the date on the Bell Legal Group's reconsideration letter.  The letter indicates that it is dated July 17, 2019 – ultimately, the date does not matter, given that the recommended result of dismissal of the wrongful death claim for failure to exhaust administrative remedies would hold whether the reconsideration letter was dated July 17 or July 23.

On October 10, 2019, Plaintiff filed a *pro se* Amended Complaint, in which she clarifies that she is alleging that the Navy "[f]ailed to monitor the quality of the water supply, [and] failed to provide notice concerning the contaminated toxics (poisons) substances in the water." (Document No. 5, p. 6).  On October 18, 2019, Plaintiff filed a *pro se* Second Amended Complaint, in which she added three Defendants to the action (in addition to retaining the Navy as a Defendant) – William Barr (United States Attorney General), R. Andrew Murray (United States Attorney for the Western District of North Carolina), and Jessie K. Liu (United States Attorney for the District of Columbia) (collectively, "the United States" or "Defendant").  (Document No. 8).

On April 2, 2020, the Court granted Plaintiff's motion to amend or correct her Second Amended Complaint, ordering that she be granted leave to file a Third Amended Complaint by April 24, 2020 and noting that "[f]urther amendments [would] not be allowed."  (Document No. 24, p. 2).  The Court granted Plaintiff two extensions of time to file her Third Amended Complaint, imposing a first deadline of May 8, 2020 that was later extended to June 22, 2020.  See (Document No. 26);  (Document No. 28.  In imposing a final deadline of June 22, 2020 for Plaintiff to file a Third Amended Complaint, the Court indicated that "[f]urther extension of this deadline is unlikely to be allowed."  (Document No. 28, p. 1).  Plaintiff did not file her *pro se* Third Amended Complaint until June 30, 2020.  (Document No. 30).  Plaintiff alleges in her Third Amended Complaint not only that her child "was born still birth," but she also contends that she herself "was diagnosed with[] Endometriosis, female infertility, Aplastic Anemia, and Neurobehavioral issues." (Document No. 30, p. 2).  Plaintiff includes in her Third Amended Complaint various pages that Defendant contends are "directly from the Complaint of another Camp Lejeune case," <u>Clendening v. United States</u>, from the Eastern District of North Carolina.  (Document No. 34, p. 19);  <u>see</u>

(Document No. 30, pp. 10-30). Those pages provide additional factual detail surrounding the water contamination at Camp Lejeune. Camp Lejeune's water was allegedly served by the Navy's own water supply facilities, which used wells "that tapped into the underground aquifer that had been contaminated by the leaking of toxic and hazardous materials from various sources," including the Hadnot Point Fuel Farm. Id. at pp. 10-11. Plaintiff's personal injury and wrongful death claims relate to a number of tort allegations against the United States, scattered throughout her Third Amended Complaint – including for defective improvements to real property, negligence, willful or wanton negligence, and fraud. Id. at pp. 2-3, 10, 24, 29.

On July 1, 2020, the United States filed the pending "Motion To Dismiss For Failure To Prosecute Or, In The Alternative, For Lack Of Subject-Matter Jurisdiction." (Document No. 29). On July 14, 2020, the United States filed the pending "Motion To Dismiss For Lack Of Subject-Matter Jurisdiction" (Document No. 33), along with a "Memorandum In Support Of Motion To Dismiss The Third Amended Complaint For Lack Of Subject-Matter Jurisdiction" (Document No. 34). Plaintiff filed a "Response to Defendants[sic] Motion To Dismiss" (Document No. 35) on July 24, 2020. The United States filed its "Reply Memorandum In Support Of Its Motion to Dismiss Third Amended Complaint For Lack Of Subject-Matter Jurisdiction" (Document No. 36) on July 29, 2020. Plaintiff filed a surreply, styled as an "Opposition [R]esponse [T]o [T]he Defendants[sic] Motion [T]o Dismiss," on August 26, 2020, without leave of Court as required by Local Rule 7.1(e). (Document No. 37).

The pending motions have now been fully briefed and are ripe for review and a recommendation to the presiding district judge.

4

## II.  STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) seeks to dismiss a complaint for lack of subject-matter jurisdiction.  Fed.R.Civ.P. 12(b)(1).  The plaintiff has the burden of proving that subject-matter jurisdiction exists.  See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).  The existence of subject-matter jurisdiction is a threshold issue the court must address before considering the merits of the case.  Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999).  "The subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).

When a defendant challenges subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, 945 F.2d at 768.  The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  Id.;  see also Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).

## III.  DISCUSSION

### A.  Motion To Dismiss For Failure To Prosecute

In the first pending motion, the United States argues that "[b]ecause Plaintiff has failed to file her Third Amended Complaint by the Court-imposed deadline of June 22, 2020, this Court should dismiss her action with prejudice for failure to prosecute pursuant to" Fed.R.Civ.P. 41(b). (Document No. 29, pp. 1, 3).  Plaintiff argues in response that she did file her Third Amended Complaint "on the date given," and when she called the Clerk's Office on June 30, 2020 "to verify

5

that her amendment was received," she was told that the pandemic had changed the processing schedule but that "[it] was in the box and it would be filed [and] stamped." (Document No. 35, p. 2).

Under Rule 41(b) of the Federal Rules of Civil Procedure, "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed.R.Civ.P. 41(b). Unless the Court orders otherwise, dismissal under this section of the rule "operates as an adjudication on the merits." Id. Courts considering involuntary dismissal for failure to prosecute under Rule 41(b) "must balance" four factors:

> (1) the degree of personal responsibility of the plaintiff, (2) the amount of prejudice caused the defendant, (3) the existence of a drawn out history of deliberately proceeding in a dilatory fashion, and (4) the existence of sanctions less drastic than dismissal.

Doyle v. Murray, 938 F.2d 33, 34 (4th Cir. 1991) (internal quotations and citations omitted). Moreover, these factors do not supply "a rigid four-prong test[;] [r]ather, the propriety of a dismissal…depends on the particular circumstances of the case." Ballard v. Carlson, 882 F.2d 93, 95 (4th Cir. 1989).

Taking Plaintiff's statements in her response brief as true – that she *did* meet the deadline for filing her Third Amended Complaint, but circumstances out of her control on account of pandemic-related delays prevented it from being filed on time – the undersigned will respectfully recommend that the motion to dismiss for failure to prosecute be denied. On balance, the four Doyle factors counsel against involuntarily dismissing Plaintiff's lawsuit. Simply because her Third Amended Complaint was filed on the docket a few days late is not sufficient reason under the circumstances to warrant involuntary dismissal. The Court does not find that Plaintiff's degree of personal responsibility weighs in favor of dismissal, and although she has requested extensions

6

of time in the past to file her Third Amended Complaint, the Court is mindful of the challenges posed by the pandemic to everyday life. The United States concedes as much in its reply brief, where it states that it "recognize[s] the circumstances of the pandemic and a policy favoring substantive adjudication." (Document No. 36, p. 2). Eight days past the filing deadline is not substantially late, and thus, the Court does not find that any prejudice has resulted to the United States on account of the slight delay. The undersigned thus respectfully recommends that the United States' motion to dismiss for failure to prosecute be denied.

## B. Motion To Dismiss For Lack Of Subject-Matter Jurisdiction

The United States asserts two arguments for why Plaintiff's Third Amended Complaint should be dismissed for lack of subject-matter jurisdiction: (1) as to the wrongful death claim, Plaintiff has failed to exhaust administrative remedies in accordance with FTCA requirements; and (2) as to both of Plaintiff's claims (for wrongful death and personal injury), Plaintiff has not alleged "conduct that falls outside of the discretionary function exception" to the FTCA, and thus, there is no waiver of immunity – presenting a jurisdictional bar to both claims. (Document No. 34, pp. 6, 8).

### 1. Failure To Exhaust Administrative Remedies

First, the United States argues, "Plaintiff has not exhausted her administrative remedies for any wrongful death claim on behalf of her late son." Id. at p. 1. Given that Defendant asserts that "there is a statutory requirement [under the FTCA] that a Plaintiff exhaust his or her administrative remedies prior to filing a lawsuit in federal court," Defendant argues that at least as to the wrongful death claim, it should be dismissed for lack of subject-matter jurisdiction. Id. at p. 5. According to Defendant, "on July 23, 2019, the Bell Legal Group [on behalf of Pride] sought reconsideration of the denial of [the wrongful death] claim." Id. at p. 7. The United States contends that the "Navy

had not taken action on this request, and six months had not passed at the time Plaintiff originally filed this suit." Id. at p. 8.

The FTCA requires that before a plaintiff can file an action in federal court "for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment," the plaintiff must first present his or her claim "to the appropriate Federal agency." 28 U.S.C. § 2675(a). As Defendant argues, "[t]he FTCA requires 'complete exhaustion' of administrative remedies before a claimant can file suit." (Document No. 34, p. 7 (citing McNeil v. United States, 508 U.S. 106, 112 (1993) (affirming the district court's dismissal of an FTCA claim for lack of subject-matter jurisdiction where the plaintiff had not exhausted administrative remedies))). Before filing in Court, a plaintiff's claim "shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a). Once that denial has been issued, a plaintiff has two options. The first option is to file suit in Court *within* six months from the date of mailing of the final denial by the agency. 28 U.S.C. § 2401(b). The second option is to "file a written request with the agency for reconsideration of a final denial of a claim" within six months of the denial. 28 C.F.R. § 14.9(b). Where a plaintiff files a request for agency reconsideration, the plaintiff must *wait* to file suit in Court for a period of 6 months "after the filing of a request for reconsideration." Id. Alternatively, where the agency has *not* taken action on the original administrative claim "within six months after it is filed," a plaintiff can (after six months have elapsed without final agency action from the time of filing the administrative claim) file an FTCA claim in federal court. 28 U.S.C. § 2675(a).

The timeline of events in this case is as follows. In May 2015, the Navy received Plaintiff's two administrative claims – for personal injury (Document No. 14-1) and for wrongful death

8

(Document No. 14-2). On January 25, 2019, the Navy denied both of Plaintiff's administrative claims, mailing the final denial a few days later. (Document No. 14-3). Plaintiff filed the instant lawsuit on July 26, 2019. (Document No. 1). Thus, as to her personal injury claim, Plaintiff has certainly complied with the statutory time requirements for filing in federal court after exhausting her administrative remedies – she filed her lawsuit within six months of the mailing of the final agency denial of her administrative claim.

However, with respect to her claim for wrongful death, Plaintiff has not fully exhausted her administrative remedies. Plaintiff sought (through the Bell Legal Group) reconsideration from the Navy of the denial of *only* her wrongful death claim (brought on behalf of the Estate of Willie J. Morris, III) in July 2019. (Document No. 34-1).[2] Given that she sought reconsideration of the wrongful death claim, she would have needed to wait six months from the filing of that reconsideration with the Navy (on July 23) before filing her lawsuit in federal court (on July 26) in order to fully exhaust her administrative remedies. 28 C.F.R. § 14.9(b). Instead, Plaintiff waited only a few days – clearly failing to comply with the regulation and thus not fully exhausting her administrative remedies before filing her FTCA claim for wrongful death in this Court. Thus, Plaintiff's claim for wrongful death should be dismissed for lack of subject-matter jurisdiction.[3]

---

[2] Although Plaintiff wrote a letter to an attorney with the Bell Legal Group, dated April 1, 2017, in which she indicates that she would "no longer require" the services of Bell Legal Group, she states in her response brief to the pending motions that the Bell Legal Group's July 2019 reconsideration letter was filed with the Navy "before [her] separation from [her] attorney." See (Document No. 14-4); (Document No. 35, p. 3). Thus, taking the statements in Plaintiff's response brief as true, the Court does not find that there is any question that the Bell Legal Group was authorized to file for reconsideration of the wrongful death claim on behalf of the Estate of Willie J. Morris, III.

[3] Plaintiff sent a letter to the Navy on May 2, 2020, in which she purported to "follow up" on the Bell Legal Group's request for reconsideration of her wrongful death claim. (Document No. 35-1, p. 1). However, she also stated in the letter that she would like to "official[ly] request for reconsideration of the denials of" both of her claims. Id. As the United States' memorandum in support of the pending motion to dismiss for lack of subject-matter jurisdiction points out, her attempt to request agency reconsideration of her administrative claims is too late, and thus, ineffective. She "had already filed suit when she submitted the request[,] and the request was submitted more than six months after her claim was denied." (Document No. 34, p. 8 n.4); see 28 C.F.R. § 14.9(b).

9

## 2. Discretionary Function Exception To The FTCA Does Not Bar Plaintiff's Personal Injury Claim

Defendant's second main argument for why Plaintiff's Complaint should be dismissed for lack of subject-matter jurisdiction is that "Plaintiff fails to allege conduct that falls outside of the discretionary function exception to the FTCA's waiver of sovereign immunity." (Document No. 34, p. 1). Defendant makes a few arguments with respect to Plaintiff's failure on this front. The undersigned points out, as does Defendant, that "much of Plaintiff[']s[] Complaint is taken directly from the Complaint of another Camp Lejeune case," the Clendening v. United States case, currently on appeal from the Eastern District of North Carolina's order granting the Government's motion to dismiss. 2020 WL 3404733 (E.D.N.C. June 19, 2020); (Document No. 34, p. 19). Thus, it is not entirely clear which factual allegations properly belong to Plaintiff's personal circumstances, and which allegations pertain only to the plaintiff in the Clendening case. Furthermore, much of Plaintiff's response brief to the United States' motion to dismiss focuses upon the North Carolina statute of repose; however, as Defendant points out in reply, it was not "assert[ing] the statute of repose as a basis for dismissing Plaintiff's action at this time." (Document No. 36, p. 3); see (Document No. 35, pp. 4-5).

The FTCA "waives sovereign immunity for most torts committed by government employees, subject to several statutory exceptions." McMellon v. United States, 387 F.3d 329, 335 (4th Cir. 2004). "[W]aivers of sovereign immunity must be strictly construed." Wood v. United States, 845 F.3d 123, 127 (4th Cir. 2017). One of these exceptions – indeed, "the most important" – "is the discretionary function exception." Id. That exception, codified by statute, specifies that the FTCA's waiver of sovereign immunity does not apply to acts or omissions "based upon the exercise or performance or the failure to exercise or perform a discretionary function or

10

duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The rationale underpinning preservation of immunity for discretionary functions "is driven by separation of powers concerns, shielding decisions of a government entity made within the scope of any regulatory policy expressed in statute, regulation, or policy guidance, even when made negligently." Wood, 845 F.3d at 128; see also Williams v. United States, 50 F.3d 299, 309 (4th Cir. 1995) (the discretionary function "exception has a fluid quality that escapes particular confinement"). "Congress intended [the discretionary function] exception to preclude liability for choices made by government officials who must exercise judgment on matters of social, economic, and political policy." Pieper v. United States ex rel. Dep't of Defense, 713 F. App'x 137, 139 (4th Cir. 2017). Plaintiff "bears the burden of demonstrating jurisdiction and showing that none of the FTCA's exceptions [including the discretionary function exception] apply." Wood, 845 F.3d at 127.

The Court possesses subject-matter jurisdiction over FTCA claims only where the discretionary function exception does not apply. Williams, 50 F.3d at 305. In order for the discretionary function exception not to apply – thus effecting a waiver of sovereign immunity under the FTCA – Plaintiff must plausibly allege two factors. See Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536 (1988) (establishing a two-prong test to determine whether the discretionary function exception applies – it "will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," but it will apply when "governmental actions and decisions [are] based on considerations of public policy").

First, Plaintiff must plausibly allege that the Government has violated "mandatory statutes or regulations." United States v. Gaubert, 499 U.S. 315, 324, 328 (1991). Where a statute or regulation "mandates particular conduct," there is an automatic presumption that "there is no room

for choice and the action will be contrary to policy" – giving rise to a cause of action under the FTCA over which the Court has subject-matter jurisdiction because the United States is not immune from suit in those circumstances.  Id.  Mandatory statutes or regulations contain "fixed or readily ascertainable standard[s]" that direct a Government employee to "perform his or her function in a specific manner" – leaving no "element of judgment or choice by the employee" as to how to carry out that directive.  Zelaya v. United States, 781 F.3d 1315, 1329-30 (11th Cir. 2015) (internal quotations and citations omitted).  The discretionary function exception applies when a statute or regulation establishes an overarching objective but does not lay out "the appropriate way in which to" achieve that objective.  Berkovitz by Berkovitz, 486 U.S. at 546.

Second, to establish jurisdiction under the FTCA, Plaintiff must plausibly allege "facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime."  Gaubert, 499 U.S. at 325.  If a Government act or omission is "susceptible to policy analysis," the discretionary function exception applies and subject-matter jurisdiction is lacking.  Id.

### a. Plaintiff Plausibly Alleges That The Government Was Violating A Mandatory Statute Or Regulation That Prescribed Specific Conduct

First, Defendant argues that "Plaintiff cannot meet her burden under the first criterion of the discretionary function exception test because she has not shown that the Government violated a mandatory provision that prescribed a specific course of conduct regarding the Camp Lejeune water supply."  (Document No. 34, p. 10).  As to both "the disposal of waste and monitoring of chemicals in the Camp Lejeune water supply" and "the notification to consumers regarding the presence of chemicals in the Camp Lejeune water supply," Defendant argues that Plaintiff has failed to show that the Navy was acting pursuant to "any mandatory directives specifically

prescribing a course of conduct."  Id.  Thus, Defendant contends, the Navy had significant discretion as to these actions, stripping the Court of subject-matter jurisdiction over Plaintiff's FTCA claims.  Plaintiff, in opposition, contends that certain "BUMED" regulations "contained some mandatory language and instructions…on how to achieve a clean water supply [and] no discretion needed to be used."  (Document No. 35, p. 7).

Facts similar to this case have been litigated in numerous federal courts.  There is a split of authority in terms of how various courts – among federal district courts and even within the same district – have decided the fate of the Government's motion to dismiss for lack of subject-matter jurisdiction in similar Camp Lejeune water contamination cases pursuant to the FTCA's discretionary function exception.  Furthermore, there is a pending appeal before the Fourth Circuit in another Camp Lejeune water contamination case.  Clendening v. United States, *appeal docketed*, No. 20-1878 (4th Cir. Aug. 14, 2020).  At the district court level in that case, the Eastern District of North Carolina granted the Government's motion to dismiss for lack of subject-matter jurisdiction.  Clendening, 2020 WL 3404733.  Given the fact that there is law to support both sides in this case and also given that there is a pending appeal at the Fourth Circuit in a Camp Lejeune water contamination case, the undersigned will decline at this early juncture to recommend dismissal of Plaintiff's FTCA claim for personal injury and instead allow further development of the record on this claim as explained below.

The Court will liberally construe Plaintiff's Third Amended Complaint, as it is required to do since she is proceeding *pro se*.  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Thus, reading Pride's Third Amended Complaint liberally, she references one regulation and one statute.  These include: (1) regulations issued by the Navy Bureau of Medicine and Surgery in 1972 (referred to hereinafter as "BUMEDs");  and (2) the Atomic Energy Act of 1954, 42 U.S.C. § 2011, *et seq.*

(Document No. 30, pp. 12, 15, 17). As the Eastern District of North Carolina has found when considering the Government's motions to dismiss in some similar cases, Plaintiff plausibly alleges that the BUMEDs provided mandatory directives to the Navy during Plaintiff's time at Camp Lejeune with the requisite level of specificity such that the undersigned will respectfully recommend that the Government's motion as to Plaintiff's personal injury claim be denied. See Bunting v. United States, 2020 WL 6587086 (E.D.N.C. Nov. 10, 2020); Washington v. Dep't of the Navy, 446 F. Supp. 3d 20 (E.D.N.C. 2020); Jones v. United States, 691 F. Supp. 2d 639 (E.D.N.C. 2010). Plaintiff plausibly alleges that the discretionary function exception does not apply here, and thus, as explained below, there is no jurisdictional bar to Plaintiff's personal injury FTCA claim at this point. But see Tate v. Camp Lejeune, 2019 WL 7373699, at *2 (E.D.N.C. Dec. 30, 2019).

With respect to the BUMEDs, the regulations plausibly include a clear instruction to the Navy – "[d]rinking water shall not contain impurities in concentrations which may be hazardous to the health of the consumers." (Document No. 30, p. 17). Furthermore, Section 6240.3C(6)(a) of the BUMEDs indicates that "effort should be made to prevent or control pollution of the [water] source." Id. Some Courts have read this language as stating a mere *goal* rather than a mandatory, specific *instruction*. See Snyder v. United States, 504 F. Supp. 2d 136, 141 (5th Cir. 2007) (holding that the discretionary function exception immunized the United States from an FTCA claim related to water contamination at Camp Lejeune because of "the absence of any regulations specifically delineating how to dispose of [contaminants] during the time of Plaintiffs' allegations"); In re Camp Lejeune North Carolina Water Contamination Litigation, 263 F. Supp. 3d 1318, 1350-51 (N.D. Ga. Dec. 5, 2016). However, when read alongside other language from the regulation – requiring that "[f]requent sanitary surveys [should] be made of the water supply system to locate

and identify health hazards which might exist in the system" – the undersigned struggles to see how the proscription against specific governmental conduct – failure to control pollution of the water—could be any more clear.  (Document No. 30, p. 17).  At this early stage of the litigation, before the parties have conducted any discovery, Plaintiff plausibly alleges that the Navy did not deliver clean drinking water in violation of the BUMEDs.

Furthermore, the undersigned agrees with the reasoning of the Eastern District of North Carolina in <u>Washington</u> and <u>Bunting</u> that distinguishes the BUMED regulations from the regulations at issue in the <u>Pieper</u> case.  <u>Bunting</u>, 2020 WL 6587086 (citing <u>Pieper</u>, 713 F. App'x 137); <u>Washington</u>, 446 F. Supp. 3d at 27 (citing <u>Pieper</u>, 713 F. App'x 137).  In the <u>Pieper</u> case, plaintiffs brought suit against the Army alleging that the Army's disposal of "hazardous chemicals by burying them in unlined pits" at Fort Detrick in Maryland led to their personal injury from exposure to such chemicals on account of groundwater contamination from leaking of the chemicals.  713 F. App'x at 138.  The plaintiffs there attempted to argue that certain regulations that the Army was to follow at Fort Detrick were sufficiently mandatory and specific such that the discretionary function exception could not apply.  <u>Id.</u> at 140.  The Fourth Circuit, affirming the district court's granting of the Government's motion to dismiss, rejected that argument, highlighting that not only did the regulations "expressly contemplate[]" the "disposal of potentially contaminated materials in Area B," but also the Executive Orders upon which the plaintiffs additionally relied "were pitched at a high level of generality."  <u>Id.</u> at 140-41, *affirming* 2016 WL 4240086 (D. Md. Aug. 11, 2016).

Here, as the <u>Bunting</u> court makes clear, Plaintiff has plausibly alleged that the BUMED regulation was "mandatory [] and sufficiently specific because it told government actors precisely what was prohibited."  2020 WL 6587086, at *3.  The regulations indicate that "[s]ubstances which

may have deleterious physiological effects…shall not be introduced into the system in a manner which would permit them to reach the consumer." (Document No. 30, p. 17). Furthermore, "[w]ith respect to the BUMED's prohibition on permitting hazardous chemicals, known and unknown, to enter the water supply, [Plaintiff plausibly alleges that] there was no [] choice." <u>Washington</u>, 446 F. Supp. 3d at 27. Without having had the benefit of discovery, Plaintiff has satisfied the minimum requirements to plausibly allege that the Court has subject-matter jurisdiction in this case so as to survive a Rule 12(b)(1) motion to dismiss. "In the context of proscriptive commands [in the relevant regulation in this FTCA case], a requirement for further specificity would place an insurmountable burden on plaintiffs because it would require plaintiffs to show that the government had mandatory instructions about how to *not* do something…[these] instructions are unlikely, if ever, to exist." <u>Bunting</u>, 2020 WL 6587086, at *3; <u>Washington</u>, 446 F. Supp. 3d at 28. The undersigned is satisfied at this stage that Plaintiff has sufficiently alleged that the BUMED regulations contain the requisite level of specificity and mandatory instructions such that Plaintiff should survive dismissal.

With respect to the Atomic Energy Act of 1954 ("AEA") that Plaintiff cites, though, the undersigned concludes that this federal statute does not even remotely address the Navy's duties with respect to disposal of contaminants in water at Camp Lejeune. As stated, Plaintiff's Third Amended Complaint incorporates a Complaint from a plaintiff in another case – the <u>Clendening</u> case from the Eastern District of North Carolina. <u>See</u> Complaint, <u>Clendening v. United States</u>, 2019 WL 3451803 (E.D.N.C. July 24, 2019). The Complaint in that case suggests that the Navy's "wrongful disposal of radioactive and chemical waste was contrary to Federal law that pre-existed the decedent's residency [at Camp Lejeune] including the Atomic Energy Act of 1954." (Document No. 30, p. 12). The undersigned has reviewed the statute (42 U.S.C. § 2011, *et seq.*)

16

and concludes that in contrast to Plaintiff's allegations regarding the BUMED regulations, Plaintiff does not plausibly allege that the AEA contains specific or mandatory language that the Navy was to follow regarding waste disposal with respect to water at Camp Lejeune. See Clendening, 2020 WL 3404733, at *5 (holding that the AEA was not a mandatory or specific statute that Plaintiff could reference so as to overcome the discretionary function exception's bar to jurisdiction).

The undersigned respectfully recommends that Plaintiff is entitled to discovery to allow for further development of the record regarding the applicability of the FTCA's discretionary function exception as applied to her claim for personal injury. At this point, the Court is satisfied that Plaintiff has plausibly alleged that the Navy violated the BUMED regulations' mandatory and specific directive to provide clean drinking water such that the FTCA's discretionary function exception does not present a jurisdictional bar at this motion to dismiss stage.

### b. Plaintiff Plausibly Alleges That The Navy's Conduct Was Not Motivated By Policy Considerations

On the second prong of the analysis, the undersigned further concludes that at this stage, Plaintiff has plausibly alleged that the Navy's failure to provide clean water at Camp Lejeune was not an action involving any policy considerations. However, this prong of the analysis need not even be reached – the undersigned has already concluded at the first prong that the Plaintiff plausibly alleged that the Navy violated a mandatory BUMED regulation. See Gaubert, 499 U.S. at 324 ("[i]f the [Government] violates the mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy"). Even on this second prong of the analysis, though, Defendant's arguments are unavailing at this motion to dismiss stage.

Defendant argues that in order to establish jurisdiction under the FTCA, Plaintiff must show that "the challenged governmental conduct is not susceptible to policy analysis" – which, Defendant contends, she cannot do. (Document No. 34, p. 14). Defendant asserts that "any decisions that the Navy or Marine Corps might have made at Camp Lejeune regarding waste disposal and monitoring the water supply were susceptible to defense and security considerations, among other policy considerations." Id. at p. 17. Defendant argues that such decisions "are rife with policy considerations and thus insulated from FTCA suit by the discretionary function exception." Id.

The Court is not persuaded at this stage of the litigation by Defendant's arguments that both the monitoring and disposal of contaminated water and the notification to individuals exposed to such water constitute functions "rife with discretion" and that are "full of implications for policy concerns." In re Camp Lejeune, 263 F. Supp. 3d at 1355-56. As the Eastern District of North Carolina found in Washington, Bunting, and Jones, Plaintiff's Third Amended Complaint plausibly alleges that "[t]here are simply no policy considerations to balance or weigh in defendant's failure to provide uncontaminated water at Camp Lejeune over a period of several decades." Bunting, 2020 WL 6587086, at *4; Washington, 446 F. Supp. 3d at 28 (same); and Jones, 691 F. Supp. 2d at 643 ("conduct with respect to [water] contamination [at Camp Lejeune] was not the subject of discretion susceptible to policy analysis"). The undersigned is mindful that other federal courts have resolved this prong of the analysis to reach an opposite conclusion. Pieper, 713 F. App'x at 141 ("waste and remediation decisions…involve the balancing of multiple factors—including national security, environmental impact, and human health"); Snyder, 504 F. Supp. 2d at 143 ("these types of decisions by the military regarding operations at Camp Le[j]eune were the kinds of government policy choices the discretionary function exception was designed to

shield"); and <u>OSI, Inc. v. United States</u>, 285 F.3d 947, 953 (11th Cir. 2002) ("[d]isposal of waste on a military base involve[s] policy choices of the most basic kind…[and] [t]he nature of the military's function requires that it be free to weigh environmental policies against security and military concerns").

Here, however, Plaintiff alleges that "over a period of decades," the Navy supplied "contaminated water at a military installation [because of a]…failure to perform due diligence [and to]…warn and protect residents." <u>Washington</u>, 446 F. Supp. 3d at 29. Plaintiff plausibly contends that this kind of conduct is "not the type of conduct the discretionary function exception was designed to shield." <u>Id.</u> Plaintiff has sufficiently alleged in her Third Amended Complaint that the Navy's decision *not* to do anything about water contamination that was affecting the health of residents at Camp Lejeune was made in contravention of a clear regulation that left no room for policy considerations to factor into the Navy's required conduct to prevent against the introduction of toxic chemicals into the water supply. Plaintiff plausibly alleges that the regulation did not leave room for "an element of judgment or choice" – and therefore, on this second prong, she plausibly contends that the Navy's conduct was not subject to policy considerations. <u>Seaside Farm, Inc. v. United States</u>, 842 F.3d 853, 858 (4th Cir. 2016) (quoting <u>Berkovitz by Berkovitz</u>, 486 U.S. at 536).

At this stage, the undersigned is satisfied that the motion to dismiss should be denied to allow for further development of the record. In fact, the Northern District of Georgia in the multidistrict litigation "permitted a period of discovery on the discretionary function exception" before ruling on the Government's motion to dismiss for lack of subject-matter jurisdiction. <u>In re Camp Lejeune</u>, 263 F. Supp. 3d at 1346. The Court finds that further development of the record by permitting Plaintiff to proceed to discovery here is similarly appropriate.

19

Plaintiff has plausibly alleged – at this motion to dismiss stage of the litigation – both that (1) the Navy violated a mandatory regulation that prescribed a course of conduct for the Navy with respect to disposal of water contaminants; and (2) the conduct at issue is not susceptible to policy analysis. Thus, the undersigned respectfully recommends that the motion to dismiss be denied because Plaintiff has plausibly alleged in the Third Amended Complaint that the discretionary function exception does not apply. Furthermore, the split of authority in outcomes on motions to dismiss by the Government for lack of subject-matter jurisdiction and the pending appeal at the Fourth Circuit in a Camp Lejeune water contamination case suggest that allowing further development of the record at this stage of the litigation is warranted. The undersigned therefore respectfully recommends that Defendant's motion to dismiss for lack of subject-matter jurisdiction be denied without prejudice as to Plaintiff's FTCA claim for personal injury. The recommendation of denial is without prejudice to the Government re-raising its arguments at summary judgment.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that the "United States' Motion To Dismiss For Failure To Prosecute Or, In The Alternative, For Lack Of Subject-Matter Jurisdiction" (Document No. 29) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the "United States' Motion To Dismiss For Lack Of Subject-Matter Jurisdiction" (Document No. 33) be **GRANTED in part** as to Plaintiff's wrongful death claim for failure to exhaust administrative remedies and **DENIED in part without prejudice** as to Plaintiff's personal injury claim.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact,

conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005);  United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Id.  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: June 16, 2021

David C. Keesler
United States Magistrate Judge