UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cv-00363-RJC-DCK

| | |
|---|---|
| AUDREY WILLIAMS PRIDE, | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) **SUPPLEMENTAL ORDER** |
| R. ANDREW MURRAY, | ) |
| WILLIAM BARR, | ) |
| JESSIE K. LIU, and | ) |
| US DEPARTMENT OF THE NAVY, | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss for Lack of Jurisdiction the Third Amended Complaint, (DE 33); the Magistrate Judge's Memorandum and Recommendation ("M&R") recommending that this Court grant in part Defendants' Motion to Dismiss as to Plaintiff's wrongful death claim and deny in part without prejudice as to Plaintiff's personal injury claim, (DE 38); and this Court's previous order adopting in part the M&R, (DE 47). In the Court's previous order, the Court reserved ruling on Plaintiff's personal injury claim pending resolution of the *Clendening*[1] case. As the Fourth Circuit has ruled on this case, the matter is now ripe.

**I.    BACKGROUND**

    **A.    Procedural**

*Pro se* Plaintiff Audrey Williams Pride ("Plaintiff" or "Pride") filed a Third Amended Complaint against Defendants on June 30, 2020. (DE 30). The Third Amended Complaint is a

---

[1] *Clendening v. United States*, No. 7:19-CV-137-BR, 2020 WL 3404733 (E.D.N.C. Jun. 19, 2020), *aff'd*, 19 F.4th 421 (4th Cir. 2021).

combination of legal arguments, letters, and portions of another Camp Lejeune complaint[2] (with Plaintiff's markings). (*Id.*). Plaintiff alleges two claims which appear to arise under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§1346(b), 2671–2680: (1) a personal injury claim and (2) a wrongful death claim on behalf of Plaintiff's stillborn son. The alleged cause of both claims is the United States' failure to provide clean drinking water at Camp Lejeune and failure to warn after learning of the contaminated water. (*Id.*). A liberal reading of the Complaint appears to show that Plaintiff alleges a number of tort allegations against the United States in relation to the two claims, including for defective improvements to real property, negligence, willful or wanton negligence, and fraud. (DE 30 at 2–3, 10, 24, 29).

Defendants filed a Motion to Dismiss for Lack of Subject-Matter Jurisdiction on July 14, 2020. (DE 33). In the M&R on the Motion to Dismiss, the Magistrate Judge recommended granting in part as to Plaintiff's wrongful death claim for failure to exhaust administrative remedies and denying in part without prejudice as to Plaintiff's personal injury claim. (DE 38). As to the personal injury claim, the M&R found that the discretionary function exception to the FTCA's waiver of sovereign immunity did not apply. (*Id.* at 20). On September 20, 2021, this Court adopted the M&R in part and granted Defendants' Motion to Dismiss the wrongful death claim, finding that Plaintiff failed to exhaust her administrative remedies as to that claim. (DE 47 at 3–6). However, the Court reserved ruling on the personal injury claim pending resolution of a similar Camp Lejeune water contamination case that was before the Fourth Circuit. As *Clendening v. United States*, 19 F.4th 421 (4th Cir. 2021) was recently decided, the personal injury claim is ripe for the Court's review.

---

[2] Plaintiff's Complaint includes portions from the complaint in the *Clendening* case.

### B. Factual

Plaintiff alleges that due to the negligence of the Navy at Camp Lejeune, she sustained personal injuries (endometriosis, female infertility, aplastic anemia, and neurobehavioral issues) and her unborn child died on account of exposure to contaminated water that was supplied to families living around Hadnot Point. (DE 30 at 2). Plaintiff was the spouse of Navy corpsmen Willie Morris, Jr. and was living at Midway Park near Hadnot Point when her son died during a still birth on April 27, 1986. (*Id.* at 2–3).

Also included in Plaintiff's Third Amended Complaint are pages that Defendants contend are directly from the complaint of another Camp Lejeune case in *Clendening v. United States*, No. 7:19-CV-137-BR, 2020 WL 3404733 (E.D.N.C. Jun. 19, 2020). These pages provide additional factual details on the water contamination at Camp Lejeune. Camp Lejeune's water was allegedly served by the Navy's own water supply facilities, which used wells "that tapped into the underground aquifer that had been contaminated by the leaking of toxic and hazardous materials from various sources," including the Hadnot Point Fuel Farm. (*Id.* at 10–11). The contamination was first discovered around 1980, however military personnel and their families were not warned and continued to consume the contaminated water. (*Id.* at 11). Tests of the Hadnot Point drinking wells in 1984-88 found elevated levels of benzene and volatile organic compounds. (*Id.* at 21). In 1989, the Environmental Protection Agency placed Camp Lejeune on the National Priorities List. (*Id.*). In approximately 2012, Defendants first publicly revealed the severity of the water contamination in and around the Hadnot Point area. (*Id.* at 22, 24). Defendants failed to warn military personnel and their families living in and around Hadnot Point of the water contamination prior to 2012. (*Id.* at 24).

3

## II. STANDARD OF REVIEW

A district court may assign dispositive pretrial matters, including motions to dismiss, to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A) & (B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3). However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). De novo review is also not required "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Id.* Similarly, when no objection is filed, "a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting FED. R. CIV. P. 72, advisory committee note).

Regarding the M&R, neither party objected to the Magistrate Judge's standard of review for a motion to dismiss for lack of subject-matter jurisdiction. Therefore, the Court adopts that standard as set forth in the M&R.

## III. DISCUSSION

Defendants assert that the discretionary function exception to the FTCA's waiver of sovereign immunity applies, which precludes subject matter jurisdiction for the personal injury claim. The Court agrees to the extent any personal injury causes of action stem from a failure to warn. However, to the extent any personal injury causes of action stem from the Navy's failure to provide clean water, the discretionary function exception does not bar subject-matter jurisdiction.

4

### A. Legal Standard

The FTCA "waives sovereign immunity for most torts committed by government employees, subject to several statutory exceptions." *McMellon v. United States*, 387 F.3d 329, 335 (4th Cir. 2004). One of these exceptions—indeed, "the most important"—"is the discretionary function exception." *Id.* That exception, codified by statute, specifies that the FTCA's waiver of sovereign immunity does not apply to acts or omissions "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The rationale underpinning preservation of immunity for discretionary functions "is driven by separation of powers concerns, shielding decisions of a government entity made within the scope of any regulatory policy expressed in statute, regulation, or policy guidance, even when made negligently." *Wood v. United States*, 845 F.3d 123, 128 (4th Cir. 2017); *see also Williams v. United States*, 50 F.3d 299, 309 (4th Cir. 1995) (the discretionary function "exception has a fluid quality that escapes particular confinement"). "Congress intended [the discretionary function] exception to preclude liability for choices made by government officials who must exercise judgment on matters of social, economic, and political policy." *Pieper v. United States ex rel. Dep't of Defense*, 713 F. App'x 137, 139 (4th Cir. 2017). Plaintiff "bears the burden of demonstrating jurisdiction and showing that none of the FTCA's exceptions [including the discretionary function exception] apply." *Wood*, 845 F.3d at 127.

The Court possesses subject-matter jurisdiction over FTCA claims only where the discretionary function exception does not apply. *Williams*, 50 F.3d at 305. For the discretionary function exception not to apply, Plaintiff must plausibly allege two factors. *See Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988) (establishing a two-prong test to determine

5

whether the discretionary function exception applies—it "will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," but it will apply when "governmental actions and decisions [are] based on considerations of public policy"). First, Plaintiff must plausibly allege that the Government has violated "mandatory statutes or regulations." *United States v. Gaubert*, 499 U.S. 315, 324, 328 (1991). Second, Plaintiff must plausibly allege "facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. at 325.

### B. *Clendening* Case

The Fourth Circuit recently addressed the discretionary function exception to the FTCA's waiver of sovereign immunity in the context of water contamination at Camp Lejeune in *Clendening v. United States*, 19 F.4th 421 (4th Cir. 2021). In *Clendening*, Carol Clendening brought suit against the United States for her husband's wrongful death allegedly caused by his exposure to contaminated water while stationed on active duty at Camp Lejeune. *Id.* at 425. The suit also asserted claims relating to failure to warn. *Id.* Ms. Clendening's husband, Gary Clendening, was stationed at Camp Lejeune in the early 1970s and lived near the Hadnot Point Fuel Farm. In 2016, Mr. Clendening died from adult leukemia, Waldenstrom macroglobulinemia, and chronic lymphoblastic lymphoma, allegedly caused by his exposure to contaminates in the water at Camp Lejeune. *Id.*

The Fourth Circuit held that any claims dealing with the exposure to contaminated water were subject to the *Feres* doctrine and fell outside the purview of the FTCA. Under the *Feres* doctrine, "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service."

*Feres v. United States*, 340 U.S. 135, 146 (1950). As Mr. Clendening was an active-duty service member living on base when he was exposed to contaminated water, the Fourth Circuit found his exposure was incident to his service and any claims stemming therefrom were precluded under the FTCA by the *Feres* doctrine. *Id.* at 428–431.

However, because the duty to warn Mr. Clendening that he was exposed to contaminated water was separate from the exposure claim and occurred after Mr. Clendening was discharged, the Fourth Circuit found that *Feres* did not bar this claim. *Id.* at 431. The court then performed a discretionary function exception analysis to determine whether claims stemming from the duty to warn were barred under this exception. At the first step of the analysis, the court found that Department of the Navy Bureau of Medicine and Surgery ("BUMED") regulations and the Atomic Energy Act of 1954 ("AEA") were discretionary as they did not prescribe any specific conduct (*i.e.*, they say "nothing about the need to provide warnings"). *Id.* at 433–34 ("Plaintiff fails to identify any state, federal, or agency provision that would have required the Government to issue a specific warning to Clendening after his discharge."). At step two, the court found "that the Government's decision of how and when to warn implicates policy decisions." *Id.* at 436. Thus, because BUMED regulations and the AEA proscribe no specific conduct regarding warning citizens of exposure to contaminated water and the Government's decision of how and why to warn is policy based, both steps of the discretionary function exception analysis were satisfied and any duty to warn claims under the FTCA were barred.

### C. Plaintiff's Personal Injury Claim

Plaintiff raises a number of tort allegations in relation to her personal injury claim, including defective improvements to real property, negligence, willful or wanton negligence, and fraud. Plaintiff's personal injury claim was allegedly caused by the Navy's failure to provide clean

7

drinking water at Camp Lejeune and failure to warn after learning of the contaminated water. The Court finds that Plaintiff's personal injury causes of action relating to the Navy's failure to warn are subject to the discretionary function exception and outside the subject-matter jurisdiction of the Court. However, the discretionary function exception does not apply to Plaintiff's personal injury causes of action relating to exposure to contaminated water.

    i.   Failure to Warn

The Fourth Circuit clearly articulated in *Clendening* that causes of action stemming from the failure of the United States to warn of exposure to contaminated water at Camp Lejeune based on BUMED regulations and the AEA are barred by the discretionary function exception as neither provision requires the Government to warn citizens who were exposed. *Id.* at 431–36. Thus, because issuing a warning is within the Government's discretion, a cause of action based on a failure to warn is subject to the discretionary function exception. Accordingly, the Court grants Defendants' motion to dismiss for lack of subjection-matter jurisdiction as to any personal injury causes of action relating to the United States failure to warn.

    ii.   Failure to Provide Clean Water

The discretionary function exception does not apply to Plaintiff's personal injury causes of action stemming from the Navy's failure to provide clean drinking water at Camp Lejeune. In *Clendening*, the plaintiff brought suit on behalf of her late husband who was an active duty servicemember when he was exposed to contaminated water at Camp Lejeune. In regard to the Navy's failure to provide clean drinking water, the Fourth Circuit found that any causes of action stemming from the servicemember's exposure to contaminated water were barred by the *Feres* doctrine. However, the *Feres* doctrine does not apply here as Plaintiff was not a servicemember when she was exposed to contaminated water at Camp Lejeune. *West v. United States*, 729 F.2d

8

1120, 1123 (7th Cir.), *reh'g granted and opinion vacated* (June 25, 1984), *on reh'g*, 744 F.2d 1317 (7th Cir. 1984) ("[T]he *Feres* doctrine has not applied to bar claims where spouses and children of service members have been injured in their own right by military personnel."). As the *Feres* doctrine does not apply, the Court must determine whether the discretionary function exception applies to Plaintiff's personal injury causes of action stemming from her exposure to contaminated water. Should the exception apply, sovereign immunity is not waived, and Plaintiff's claim is barred. However, if the exception does not apply, sovereign immunity remains waived, and Plaintiff's claim is allowed.

Accordingly, for Plaintiff to maintain her claim (i.e., the discretionary function exception does not apply), (1) the Government's conduct must be "mandate[d]" by a "statute, regulation, or policy," rather than "the product of discretion" and (2) the challenged conduct must not involve a decision "based on considerations of public policy." *Clendening*, 19 F.4th at 433, 435.

### a. Mandatory Provision that Proscribed Specific Conduct

Plaintiff alleges that certain BUMED regulations and the AEA are mandatory provisions that prescribe a specific course of conduct regarding the Camp Lejeune water supply. The Court agrees Plaintiff plausibly alleged that the Navy violated the mandatory proscribed conduct of the BUMED regulations, but not the AEA.

With respect to the BUMEDs, the regulations plausibly include a clear instruction to the Navy against providing contaminated drinking water.

> d. <u>Chemical Characteristics (Limits).</u> Drinking water shall not contain impurities in concentrations which may be hazardous to the health of the consumers . . . Substances which may have deleterious physiological effects, or for which physiological effects are not known, shall not be introduced into the system in a manner which would permit them to reach the consumer.

BUMED 6240.3C 7(d). Moreover, BUMEDs 6240.3C(6)(a) and (b) add that "effort should be

9

Case 3:19-cv-00363-RJC-DCK    Document 49    Filed 03/31/22    Page 9 of 13

made to prevent or control pollution of the source" and "[f]requent sanitary surveys shall be made of the water supply system to locate and identify health hazards which might exist in the system." The Court is aware that there is a split of authority whether the BUMEDs, or similar regulations, proscribe mandated conduct or state discretionary goals.[3] While some courts have found that the BUMED regulations are discretionary because they do not specifically describe each step that the government must take to provide clean drinking water, the undersigned disagrees and, like the M&R, fails to see how the proscription against specific government conduct—preventing pollutants in drinking water from reaching consumers—could be any more clear. As the Supreme Court noted, "the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536. Such is the case here as the BUMED regulations proscribe that the Navy provide uncontaminated drinking water. Thus, "[w]ith respect to the BUMED's prohibition on permitting hazardous chemicals, known and unknown, to enter the water supply, there was no such choice." *Washington v. Dep't of the Navy*, 446 F. Supp. 3d 20, 27 (E.D.N.C. 2020). And "a requirement for further

---

[3] *Compare Bunting v. United States*, No. 7:19-cv-67-BO, 2020 WL 6587086, at 2–4* (E.D.N.C. Nov. 10, 2020) (finding the discretionary function exception did not apply when analyzing the 1957 Manual of Naval Preventative Medicine); *Washington v. Dep't of the Navy*, 446 F. Supp. 3d 20, 25–29 (finding the discretionary function exception did not apply when analyzing BUMED regulations); *Jones v. United States*, 691 F.Supp. 2d 639, 642–43 (E.D.N.C. 2010) (finding the discretionary function exception did not apply when analyzing BUMED regulations); *with Snyder v. United States*, 504 F. Supp. 2d 136, 141 (5th Cir. 2007) (holding that the discretionary function exception immunized the United States from an FTCA claim related to water contamination at Camp Lejeune because of "the absence of any regulations specifically delineating how to dispose of [contaminants] during the time of Plaintiffs' allegations" even though a regulation stated that refuse should not be disposed where it may pollute drinking water); *In re Camp Lejeune N.C. Water Contamination Litig.*, 263 F. Supp. 3d 1318, 1343–57 (N.D. Ga. 2016), *aff'd*, 774F.App'x 564 (11th Cir. 2019) (determining the discretionary function exception applies when analyzing BUMED regulations—"The question is not whether Camp Lejeune was under a directive to provide a clean water supply; the question is whether those responsible for the required clean water supply had any discretion in the manner in which that supply was to be achieved").

specificity would place an insurmountable burden on plaintiffs because it would require plaintiffs to show that the government had mandatory instructions about how to not do something. Such instructions are unlikely, if ever, to exist." *Bunting v. United States*, No. 7:19-CV-67-BO, 2020 WL 6587086, at *3 (E.D.N.C. Nov. 10, 2020).

Turning to the AEA, Plaintiff generally cites to the Atomic Energy Act of 1954, 42 U.S.C. § 2011-2021, and alleges that the Navy's "wrongful disposal of radioactive and chemical waste was contrary to Federal law that pre-existed the decedent's residency [at Camp Lejeune] including the Atomic Energy Act of 1954." (DE 30 at 12). However, Plaintiff fails to cite to a specific provision that proscribed exact conduct the Navy failed to follow. Moreover, after reviewing the statute, it is unclear what proscribed conduct the Navy failed to follow in the present case. Accordingly, Plaintiff failed to plausibly allege that the AEA contains specific or mandatory language that the Navy was required to follow regarding waste disposal with respect to water at Camp Lejeune.[4]

### b. The Navy's Conduct was not Motivated by Policy Concerns

The Court is not persuaded that providing a clean water supply to individuals at Camp Lejeune is rife with policy considerations. At step two of the discretionary function exception analysis, the government action must be susceptible to policy analysis for the exception to apply. *Seaside Farm, Inc. v. United States*, 842 F.3d 853, 858 (4th Cir. 2016). "The purpose of this step in the discretionary function analysis is to prevent second-guessing of government actions based on policy, understanding that government actors must weigh various policy considerations and

---

[4] In the *Clendening* case, the Fourt Circuit noted that a general reference to the AEA "for the proposition that the Government had no discretion to pollute the water or bury nuclear waste at the base" was "not fully flesh[ed] out." *Clendening*, 19 F.4th at n.10.
11

make judgments." *See Berkovitz*, 486 U.S. at 536–37. Of note, in *Rich*, the Fourth Circuit found that government inattention and carelessness implicated no policy considerations. *Rich v. United States*, 811 F.3d 140, 147–48 (4th Cir. 2015).

In interpreting *Rich*, our sister court held that "there are simply no policy considerations to balance or weigh in [the Navy's] failure to provide uncontaminated water at Camp Lejeune over a period of several decades." *Washington v. Dep't of the Navy*, 446 F. Supp. 3d 20, 28 (E.D.N.C. 2020); *see also Bunting v. United States*, No. 7:19-CV-67-BO, 2020 WL 6587086, at *4 (E.D.N.C. Nov. 10, 2020) (same); *Jones v. United States*, 691 F. Supp. 2d 639, 643 (E.D.N.C. 2010) ("[C]onduct with respect to [water] contamination [at Camp Lejeune] was not the subject of discretion susceptible to policy analysis"). The Court is mindful that other courts have found differently based in part on national security concerns.[5] Here, however, Plaintiff alleges that over a period of decades the Navy supplied contaminated water at a military installation because of a failure to perform due diligence, in direct violation of BUMED regulations that unequivocally mandated that the Navy provide clean water. Plaintiff plausibly contends that the Navy's neglectfulness "is not susceptible to policy analysis and is not the type of conduct the discretionary function exception was designed to shield." *Washington*, 446 F. Supp. 3d at 29. Moreover, shielding the government from potential liability for exposing military personnel, their families, and civilians to contaminated water based on purported public policy considerations is unavailing. "[N]ational-security concerns must not become a talisman used to ward off inconvenient claims—

---

[5] *Pieper*, 713 F. App'x at 141 ("[W]aste and remediation decisions…involve the balancing of multiple factors—including national security, environmental impact, and human health"); *Snyder v. United States*, 504 F. Supp. 2d 136, 143 (S.D. Miss. 2007), *aff'd*, 296 F. App'x 399 (5th Cir. 2008) ("[T]hese types of decisions by the military regarding operations at Camp Le[j]eune were the kinds of government policy choices the discretionary function exception was designed to shield").

12

a 'label' used to 'cover a multitude of sins.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1862 (2017).

Accordingly, the discretionary function exception does not apply to Plaintiff's personal injury causes of action stemming from the Navy's failure to provide clean drinking water at Camp Lejeune, and the Court has subject-matter jurisdiction over these causes of action.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The Magistrate Judge's M&R, (DE 38), is **ADOPTED in part**; and

2. Defendants' Motion to Dismiss for Lack of Jurisdiction the Third Amended Complaint, (DE 33), is **GRANTED in part** as to any personal injury causes of action relating to the United States' failure to warn and **DENIED in part** as to any personal injury causes of action relating to the United States' failure to provide clean water.

3. The **STAY** ordered by this Court on September 20, 2021 is **LIFTED**.

**SO ORDERED**.

Signed: March 31, 2022

Robert J. Conrad, Jr.
United States District Judge